Eric Abraham, Esq.
William P. Murtha, Esq
**HILL WALLACK LLP**
21 Roszel Road
Princeton, New Jersey 08540
(609) 734-4447
eabraham@hillwallack.com
wmurtha@hillwallack.com

*Attorneys for Plaintiff*
*BTL Industries, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BTL INDUSTRIES, INC, <br><br> Plaintiff, <br><br> v. <br><br> EXQUISITE DEPOT LLC and OMRY GOTTLIB, <br><br> Defendants. | Civil Action No. 24-9407 <br><br> *Document Electronically Filed* |

## COMPLAINT

Plaintiff BTL Industries, Inc. ("Plaintiff" or "BTL"), by and through the undersigned counsel, files this Complaint for patent infringement, trademark infringement, and unfair competition against Defendants Exquisite Depot LLC ("Exquisite Depot") and Omry Gottlib (collectively, "Defendants") and alleges as follows:

## PARTIES

1.      BTL is a Delaware corporation with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

2.      On information and belief, Defendant Exquisite Depot is a New Jersey Domestic Limited Liability Corporation with a principal place of business at 85 Independence Drive, East Brunswick, New Jersey 0816.

3.      On information and belief, Defendant Exquisite Depot has a Registered Agent listed as Northwest Registered Agent, LLC located at Five Greentree Centre, 525 NJ-73, Suite 104, Marlton, New Jersey 08053.

4.      On information and belief, Defendant Omry Gottlib is the Chief Executive Officer of Defendant Exquisite Depot and resides at 85 Independence Drive, East Brunswick, New Jersey 08816.

## JURISDICTION AND VENUE

5.      Subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051 and 1121 exists pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)-(b).

6.      Subject-matter jurisdiction for the trademark and unfair competition claims asserted in this complaint exists pursuant to 28 U.S.C. §§ 1331 and 1338.

7.      This Court has supplemental jurisdiction over BTL's claims arising under the laws of New Jersey, pursuant to 28 U.S.C. § 1367(a), because BTL's state-law claims are so related to BTL's federal-law claims insofar as they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.      This Court has personal jurisdiction over Defendants because they or their employees have committed acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), and are subject to this Court's jurisdiction under 28 U.S.C. § 1400(b).

4869-7597-4632, v. 2

9.     This Court has personal jurisdiction over Defendant Exquisite Depot because it is a New Jersey corporation and has a principal place of business in this District.

10.    This Court has personal jurisdiction over Defendant Omry Gottlib because he is domiciled in this District.

11.    Further, the acts complained of herein occurred in this District.

12.    Similarly, the exercise of personal jurisdiction over Defendants comports with the due process requirements of the United States Constitution because:

    a.     Defendants have purposely established "minimum contacts" with the State of New Jersey and this District; and

    b.     the exercise of personal jurisdiction over Defendants will not offend the traditional notions of fair play and substantial justice.

13.    Therefore, this Court has specific and general jurisdiction over Defendants.

14.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and 1400(b) at least because Defendants have their principal place of business and are domiciled in this District and the acts complained of herein occurred in this District.

## BACKGROUND

15.    BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity, electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. BTL denotes its products and services that feature this technology with its HIFEM® brand and other trademarks.

3

16.     The first such device that BTL developed was the EMSCULPT® device, a standalone, non-invasive, FDA-cleared aesthetic body-contouring device. *See* **Exhibit 1**, attached hereto (BTL March 2019 Press Release).

17.     BTL EMSCULPT® device created a new market in which it quicky became the innovative industry leader. Before BTL launched the EMSCULPT® device in 2018, no other product used high-intensity, focused, electromagnetic technology to tone and firm muscle for non-invasive, aesthetic body contouring.

18.     The aesthetic industry has recognized BTL's innovation, hailing it as having taken "the aesthetics industry by storm;" praising BTL as being the first to apply high-intensity, focused, electromagnetic energy technology for aesthetics; and lauding the EMSCULPT® device as having "transformed treatment protocols." *See* **Exhibit 1**.

19.     BTL's EMSCULPT NEO® device is FDA-cleared and uses high-intensity electromagnetic energy to induce powerful muscle contractions—unachievable through typical voluntary contractions—to contour an individual's physique. The EMSCULPT NEO® device is currently cleared by the FDA as a non-invasive treatment for the abdomen, buttocks, arms, calves, and thighs. BTL markets and distributes its EMSCULPT NEO® device to healthcare professionals and licenses these professionals to provide treatment services using the device.

20.     The EMSCULPT NEO® device has been a breakthrough development in the aesthetics industry, receiving plaudits from some of the industry's largest companies. For example, the EMSCULPT NEO® device won Dermascope.com's Aesthetician's Choice Award in 2022 and Glamour magazine described the device as "revolutionary." *See* **Exhibit 2**, attached hereto (Dermascope and Glamour Awards).

**A.     The Asserted Patent**

21.     On November 19, 2019, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 10,478,634 (the "'634 patent"), entitled "Aesthetic Method and Biological Structure Treatment by Magnetic Field" to BTL Medical Technologies S.R.O. A true and correct copy of the '634 patent is attached to this Complaint as **Exhibit 3**. The '634 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringement of the '634 patent, including equitable relief and damages.

### B.    BTL's Trademarks

22.     BTL uses and licenses (for the sole purpose of advertising the equipment and related services) registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States, including the following federally registered trademarks for EMSCULPT®, EMSCULPT NEO®, and EM® (collectively, the "BTL Trademarks"):

> a.    Registration No. 5,572,801 for EMSCULPT in Class 010 for, among other goods, "medical apparatus and instruments for body toning and body shaping" and "medical apparatus and instruments for the removal of fat;"
>
> b.    Registration No. 6,069,279 for EMSCULPT in Class 044 for, among other services, "medical services;"
>
> c.    Registration No. 6,373,947 for EMSCULPT NEO in Class 010 for, among other goods, "medical apparatus and instruments for body toning and body shaping" and "medical apparatus and instruments for the removal of fat" and in Class 044 for, among other services, "medical services;" and

      d.     Registration No. 5,915,636 for EM in Class 044 for, among other services, "medical services."

23.    BTL has continuously and exclusively used the BTL Trademarks and has never abandoned them. The BTL Trademarks are validly registered in the United States and are in full force and effect. True and correct status copies of the registration certificates for each of the above trademarks, obtained from the USPTO, are attached to this Complaint as **Exhibit 4**. These registrations constitute *prima facie* evidence of validity of the BTL Trademarks and BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

24.    The BTL Trademarks, therefore, perform an important source-identifying function for BTL's aesthetic body-contouring devices like the EMSCULPT®, EMSCULPT NEO® and associated treatment services. The BTL Trademarks signify to purchasers that the body-contouring devices come from BTL, and the body-contouring services are rendered by BTL's devices and administered by BTL-trained and BTL-authorized service providers. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

## <u>NATURE OF THIS ACTION</u>

25.    This is a civil action brought by BTL arising out of Defendants' past and present patent infringement in violation of the patent laws of the United States, past and present trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and common law trademark infringement and unfair competition.

26.    On information and belief, Defendants manufacturer, offer for sale, and/or sell products that infringe the '634 patent, including without limitation the six (6) devices identified in the following table (the "Accused Devices"):

| ACCUSED DEVICES | | | |
|---|---|---|---|
| # | **Device Name** | **Landing Page** | **SKU Identifier** | **Device Image** |
| 1 | Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine | https://www.exquisitedepot.com/product/exquisite-2-in-1-fat-freezing-body-slimming-emsulpt-neo-machine/ | ED-WL-EMT90 |  |
| 2 | Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine | https://www.exquisitedepot.com/product/exquisite-emsculpt-electromagnetic-slimming-muscle-shaping-machine/ | ED-WL-HMT82 |  |

4869-7597-4632, v. 2

| 3 | Exquisite Four Handle EM Sculpt Fat Burning Therapy | https://www.exquisitedepot.com/product/exquisite-four-handle-em-sculpt-fat-burning-therapy/ | ED-WL-EMT88 |  |
| 4 | Exquisite Four Handle EMS Sculpt Therapy | https://www.exquisitedepot.com/product/exquisite-four-handle-emsculpt-therapy/ | ED-EMT86 |  |

| 5 | Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine | https://www.exquisitedepot.com/product/exquisite-non-invasive-body-sculpting-focused-electromagnetic-contour-machine/ | ED-WL-JK88611 |  |
|---|---|---|---|---|
| 6 | Exquisite One Handle EMS Sculpt Machine | https://www.exquisitedepot.com/product/exquisite-one-handle-ems-sculpt-machine/ | ED-WL-EMT81 |  |

27.     Defendants promote the Accused Devices on their website and social media accounts, including paid advertisements across Meta platforms, using terms identical to the BTL Trademarks, including without limitation "EMSCULPT" and "EMSCULPT NEO" and terms

9

confusingly similar to the BTL Trademarks, including without limitation "EMSCULPTNEO," "EMS SCULPT," "EM-SCULPT," "EM SCULPT," "EMSCULPT-NEO," and "EMS-SCULPT."

28.    On information and belief, Defendants' activities are ongoing despite attorneys for BTL informing Defendants that their activities violate BTL's rights. On August 4, 2023, attorneys for BTL sent a demand letter via email alerting Defendants to their infringing conduct and BTL's intellectual property rights. On August 7, 2023, that same demand letter was sent via Certified Mail. On November 30, 2023, attorneys for BTL sent Defendants a follow-up letter after no response from Defendants. On June 3, 2024, attorneys for BTL sent Defendants another follow-up letter. To date, Defendants have not responded to or otherwise acknowledged BTL's attempted communications. Copies of these communications are attached hereto as **Exhibit 5**.

29.    The images below are representative of Defendants' infringing conduct:



(https://www.instagram.com/p/Cq6RU9DADYu/; accessed July 31, 2024)

Exquisite 2 in 1 Fat Freezing Body Slimming EMSulpt NEO Machine

$14,999.99 $9,773.97

(https://www.exquisitedepot.com/product/exquisite-2-in-1-fat-freezing-body-slimming-emsulpt-neo-machine/; accessed July 31, 2024)

Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine

(https://www.exquisitedepot.com/product/exquisite-emsculpt-electromagnetic-slimming-muscle-shaping-machine/; accessed July 31, 2024)

Exquisite Four Handle EM Sculpt Fat Burning Therapy

(https://www.exquisitedepot.com/product/exquisite-four-handle-em-sculpt-fat-burning-therapy/; accessed July 31, 2024)

Exquisite Four Handle EMS Sculpt Therapy

(https://www.exquisitedepot.com/product/exquisite-four-handle-emsculpt-therapy/; accessed July 31, 2024)

(https://www.exquisitedepot.com/product/exquisite-one-handle-ems-sculpt-machine/; accessed July 31, 2024)

30.    On information and belief, the Accused Devices implement the same or substantively the same technology as the '634 patent.

31.    Defendants' use of "EMSCULPTNEO," "EMS SCULPT," "EMSCULPT," "EM-SCULPT," "EM SCULPT," "EMSCULPT NEO," "EMSCULPT-NEO," and "EMS-SCULPT" is without BTL's authorization.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,478,634**

32.    BTL repeats and re-alleges paragraphs 1-31 as if fully set forth herein.

33.    The '634 patent is directed toward a method for toning muscles in a patient using time-varying, magnetic fields. Claim 1 of the patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region.

4869-7597-4632, v. 2

wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region.

34.     Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 patent by making, using, offering to sell, selling, or importing the Accused Devices in the United States and by encouraging, promoting, and instructing customers to use at least the Accused Devices in manner that directly infringes at least claim 1 of the '634 patent.

35.     Defendants have and continue to encourage, promote, and instruct customers to perform the preamble of claim 1 of the '634 patent, which recites "[a] method for toning muscles in a patient using time-varying magnetic fields."

36.     The landing pages for the Accused Devices encourage, promote, or instruct customers to use the Accused Devices in a manner that tones a patient's muscles using time-varying magnetic fields.

37.     The landing page for the Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine states that the device is "approved to burn fat and build muscle mass" which "yield[s] better muscle tone."

38.     On information and belief, this language indicates that the machine is used to tone muscles.

39.     The landing page also states that the device uses "high-intensity focused energy."

40.     On information and belief, this "high-intensity focused energy" is time-varying magnetic waves.

41.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine produces time-varying electromagnetic waves.

42.     The landing page for the Exquisite Four Handle EM Sculpt Fat Burning Therapy Machine represents that the machine tones muscles.

43.     For example, the landing page states that the machine helps patients "lose fat and gain muscle, shaping abs vest line peach butt, arm leg gain [sic]."

44.     On information and belief, this language indicates that the machine tones muscles.

45.     The landing page also states that the device uses "electromagnetic wave[s]."

46.     On information and belief, a reasonable opportunity for further investigation or discovery will show that these electromagnetic waves are time varying.

47.     The landing page for the Exquisite Four Handle EMS Sculpt Therapy Machine represents that the machine tones muscles using high-intensity focused energy.

48.     For example, the landing page states the machine uses "high-intensity focused energy" which "yield[s] better muscle tone."

49.     On information and belief, a reasonable opportunity for further investigation or discovery will show that this "high-intensity focused energy" is time-varying electromagnetic waves.

50.     The landing page for the Exquisite One Handle EMS Sculpt Machine represents that the machine tones muscles using magnetic fields.

51.     For example, the landing pages states that the machine uses "High Energy Focused Electromagnetic Wave technology."

52.     On information and belief, a reasonable opportunity for further investigation or discovery will show these electromagnetic waves are time-varying.

53.     For example, the landing pages also states that the machine "shap[es] the vest line," "create[es] the peach hips," and "shap[es] the mermaid line.

54.     On information and belief, this language constitutes muscle toning.

55.     On information and belief, the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine and the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine operate in substantially the same manner as the other Accused Devices.

56.     On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine tones muscles using time-varying electromagnetic waves.

57.     On information and belief, a reasonable opportunity for further investigation or discovery will show the Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine tones muscles using time-varying electromagnetic waves.

58.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock."

59.     On information and belief, the First Accused Devices include at least one applicator comprising a magnetic field generating coil.

60.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the applicator(s) of the Accused Devices are put into contact with a patient's skin or clothing in order to effect treatment at the patient's abdomen or buttock.

61.     The landing page for the Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine states that the machine is configured to "treat your abdomen, buttocks, arms, calves, and thighs."

62.     The landing page for this machine also depicts images of the machine's applicators which, on information and belief, are used to treat patients.

63.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine's applicators contain magnetic field generating coils.

64.     The landing page represents that the Exquisite Four Handle EM Sculpt Fat Burning Therapy Machine's has a "treatment head" that emits "electromagnetic wave[s]" "to a depth of 7cm muscle layer."

65.     The landing page for this machine also states that the machine treats the "abdomen or buttocks."

66.     On information and belief, this "head" must be placed on a patient's skin or clothing in order to operate.

67.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the Exquisite Four Handle EMS Sculpt Therapy Machine's applicators contain magnetic field generating coils.

68.     The landing page for this machine states that the "procedure is currently to treat your abdomen, buttocks, arms, calves, and thighs."

4869-7597-4632, v. 2

69.    On information and belief, the applicator of the Exquisite One Handle EMS Sculpt Machine contains a magnetic field generating coil.

70.    For example, the landing page represents that the device uses "High Energy Focused Electromagnetic Wave technology."

71.    The landing page for this machine also represents that the machine is used on the abdomen or buttocks.

72.    For example, the landing page states the machine is used to "exercise[e] the abdominal muscles," "create[e] the peach hips," "improv[e] abdominal muscles."

73.    On information and belief, the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine and the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine operate in substantially the same manner as the other Accused Devices.

74.    On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine has a first applicator comprising a magnetic field generating coil that is put in contact with a patient's abdomen or buttock.

75.    On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine has a first applicator comprising a magnetic field generating coil that is put in contact with a patient's abdomen or buttock.

76.    Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing."

77.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices come with adjustable flexible belts that are used to hold the applicator(s) to the patient's skin or clothing.

78.     The landing page for the Exquisite Four Handle EM Sculpt Fat Burning Therapy Machine indicates that the machine comes with three "binding[s]."

79.     On information and belief, a reasonable opportunity for further investigation or discovery will show that these bindings are flexible and adjustable and used to hold the machine's handles to a patient.

80.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the Exquisite One Handle EMS Sculpt Machine comes with an adjustable flexible belt that is used to hold the applicator to the patient's skin or clothing.

81.     On information and belief, the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine and the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine operate in substantially the same manner as the other Accused Devices.

82.     On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine comes with adjustable flexible belts that are used to hold the applicators to the patient's skin or clothing.

83.     On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine comes with adjustable flexible belts that are used to hold the applicators to the patient's skin or clothing.

18

84.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices come with adjustable flexible belts that are used to hold the applicator(s) to the patient's skin or clothing.

85.     For example, the applicators of the Accused Devices are similar in appearance to the other devices known to BTL that utilize adjustable flexible belts to hold them in position on a patient's skin or clothing.

86.     Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field."

87.     On information and belief, a reasonable opportunity for further investigation or discovery will show that the Accused Devices include power supplies which transmit energy to the applicators, which in turn generates time-varying magnetic fields.

88.     The landing page for the Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine depicts the back of the machine showing, on information and belief, where a power cord is inserted.

89.     On information and belief, the inserted power cord supplies power to the applicators so that they may generate time-varying magnetic fields.

90.     On information and belief, the method of operation of the Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine includes providing energy to an energy storage device that in turn also transmits energy to the magnetic field generating coil(s) in the applicator(s), which generates the time-varying magnetic fields.

91.     The landing page for the Exquisite Four Handle EM Sculpt Fat Burning Therapy Machine references a "power supply line."

4869-7597-4632, v. 2

92.     On information and belief, this "power supply line" is used to provide energy to the magnetic field generating coils.

93.     On information and belief, the method of operation of the Exquisite Four Handle EM Sculpt Fat Burning Therapy Machine includes providing energy to an energy storage device that in turn also transmits energy to the magnetic field generating coil(s) in the applicator(s), which generates the time-varying magnetic fields.

94.     The landing page for the Exquisite Four Handle EMS Sculpt Therapy Machine depicts the back of the machine showing, on information and belief, where a power cord is inserted.

95.     On information and belief, the method of operation for the Exquisite Fourt Handle EMS Sculpt Therapy Machine includes providing energy to an energy storage device that in turn also transmits energy to the magnetic field generating coil(s) in the applicator(s), which generates the time-varying magnetic fields.

96.     The landing page for the Exquisite One Handle EMS Sculpt Machine represents that the device uses "High Energy Focused Electromagnetic Wave technology."

97.     On information and belief, this "High Energy Focused Electromagnetic Wave technology" requires electricity.

98.     Accordingly, it is reasonable to assume that the machine provides energy to its applicator which, for the reasons stated above, contains a magnetic field generating coil.

99.     On information and belief, the method of operation for the Exquisite One Handle EMS Sculpt Machine includes providing energy to an energy storage device that in turn also transmits energy to the magnetic field generating coil(s) in the applicator(s), which generates the time-varying magnetic fields.

4869-7597-4632, v. 2

100.    On information and belief, the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine and the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine operate in substantially the same manner as the other Accused Devices.

101.    On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine provides energy to the magnetic field generating coils in order to generate time-varying magnetic fields.

102.    On information and belief, the method of operation of the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine includes providing energy to an energy storage device that in turn also transmits energy to the magnetic field generating coil(s) in the applicator(s), which generates the time-varying magnetic fields.

103.    On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine provides energy to the magnetic field generating coils in order to generate time-varying magnetic fields.

104.    On information and belief, the method of operation of the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine includes providing energy to an energy storage device that in turn also transmits energy to the magnetic field generating coil(s) in the applicator(s), which generates the time-varying magnetic fields.

105.    Defendants have and continue to encourage, promote, and instruct customers to perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region."

106.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine generates and delivers magnetic fields that vary in area density depending on the treatment mode and parameters and have a magnetic fluence of 50–1,500 T cm$^2$.

107.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the Exquisite Four Handle EM Sculpt Fat Burning Therapy Machine generates and delivers magnetic fields that vary in area density depending on the treatment mode and parameters and have a magnetic fluence of 50–1,500 T cm$^2$.

108.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the Exquisite Four Handle EMS Sculpt Therapy Machine generates and delivers magnetic fields that vary in area density depending on the treatment mode and parameters and have a magnetic fluence of 50–1,500 T cm$^2$.

109.    On information and belief, a reasonable opportunity for further investigation or discovery will show that the Exquisite One Handle EMS Sculpt Machine generates and delivers magnetic fields that vary in area density depending on the treatment mode and parameters and have a magnetic fluence of 50–1,500 T cm$^2$.

110.    On information and belief, the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine and the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine operate in substantially the same manner as the other Accused Devices.

111.    On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine

22

generates and delivers magnetic fields that vary in area density depending on the treatment mode and parameters and have a magnetic fluence of 50–1,500 T cm$^2$.

112.    On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour machine generates and delivers magnetic fields that vary in area density depending on the treatment mode and parameters and have a magnetic fluence of 50–1,500 T cm$^2$.

113.    Defendants have and continue to encourage, promote, and instruct customers to perform the claimed "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region."

114.    The landing pages for the Accused Devices promote and advertise the devices' abilities to generate magnetic fields sufficient to cause muscle contractions.

115.    For the reasons stated above, the Accused Devices produce time-varying magnetic fields.

116.    The landing page for the Exquisite EMS Sculpt Electromagnetic Slimming & Muscle Shaping Machine represents that the machine causes muscle contractions.

117.    For example, the landing page states the machine "cause[s] thousands of powerful muscle contractions."

118.    The landing page for the Exquisite Four Handle EM Sculpt Fat Burning Therapy Machine represents that the machine causes muscle contractions.

119.    For example, the landing page states the machine is "used to 'jumpstart' muscle contractions" and produces treatment "equivalent to 30,000 abdominal contractors/squat muscle contractions."

120.    The landing page for the Exquisite Four Handle EMS Sculpt Therapy Machine represents that the machine causes muscle contractions.

121.    For example, the landing page states the machine causes "thousands of powerful muscle contractions."

122.    The landing page for the Exquisite One Handle EMS Sculpt Machine represents that the machine causes muscle contractions.

123.    For example, the landing page states the machine "continuously expand[s] and contract[s] autologous muscles" and causes "100% extreme muscle contraction."

124.    On information and belief, the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine and the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine operate in substantially the same manner as the other Accused Devices.

125.    On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite 2 in 1 Fat Freezing Body Slimming EMSculpt NEO Machine produces time-varying magnetic fields with sufficient magnetic flux density to cause muscle contractions.

126.    On information and belief, a reasonable opportunity for further investigation or discovery will show the Exquisite Non-Invasive Body Sculpting Focused Electromagnetic Contour Machine produces time-varying magnetic fields with sufficient magnetic flux density to cause muscle contractions.

127.    Defendants' infringement of the '634 patent has been, and continues to be, willful and malicious. On information and belief, Defendants have been aware of the '634 patent since before the filing of this complaint and have infringed the '634 patent willfully and deliberately and

4869-7597-4632, v. 2

with knowledge that such conduct violates 35 U.S.C. § 271. Defendants were aware of BTL's products for the reasons stated in paragraphs 21, 22, 27–29, and BTL marks its products with a reference to its online patent listing at www.btlnet.com/patents. Moreover, BTL informed Defendants of its patent infringement by letter on August 4, 2023.

128.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 patent.

## COUNT II: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

129.    BTL repeats and re-alleges paragraphs 1-31 as if fully set forth herein.

130.    By using "EMSCULPTNEO," "EMS SCULPT," "EMSCULPT," "EM-SCULPT," "EM SCULPT," "EMSCULPT NEO," "EMSCULPT-NEO," and "EMS-SCULPT" Defendants are creating confusion among the consuming public as to the source, origin, sponsorship, and/or affiliation of the Accused Devices with BTL.

131.    Defendants' conduct relating to the BTL Trademarks is without authorization.

132.    Defendants are thus in violation of 15 U.S.C. § 1114 regarding the BTL Trademarks and 15 U.S.C. § 1125(a) regarding the use of "EMSCULPTNEO," "EMS SCULPT," "EMSCULPT," "EM-SCULPT," "EM SCULPT," "EMSCULPT NEO," "EMSCULPT-NEO," and "EMS-SCULPT" and/or other confusingly similar terms.

133.    Defendants' actions have caused BTL irreparable harm for which BTL is entitled to a permanent injunction under 15 U.S.C. § 1116.

134.    Such acts further cause harm to BTL including without limitation BTL's reputation and goodwill, for which BTL is entitled to recover actual damages as well as the costs of any necessary corrective advertising.

135.    Because Defendants' conduct is willful, malicious, and exceptional, BTL is entitled to an accounting of profits, attorneys' fees, and multiplied damages.

## COUNT III: FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING UNDER 15 U.S.C. § 1125

136.    BTL repeats and re-alleges paragraphs 1-31 as if fully set forth herein.

137.    Defendants have no right to use the BTL Trademarks and/or other confusingly similar terms in connection with its goods, yet Defendants have traded off the goodwill associated with BTL and its products.

138.    Defendants have falsely held themselves out to customers and potential customers as being connected with BTL.

139.    Defendants have acted with intent to cause confusion or deceive the public as to the source and origin of its goods.

140.    Defendants' false designation of origin and false representations constitute unfair competition under 15 U.S.C. § 1125.

## COUNT IV: VIOLATION OF THE NEW JERSEY UNFAIR COMPETITION ACT UNDER N.J. STAT.ANN. § 56:4-1

141.    BTL repeats and re-alleges paragraphs 1-31 as if fully set forth herein.

142.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks to promote, market, offer for sale, and sell the Accused Devices appropriates for its own use the BTL Trademarks and the reputation and goodwill associated therewith, in violation of N.J. Stat. § 56:4-1.

143.    BTL has sustained injury, damage, and loss in New Jersey based on Defendants' use of the BTL Trademarks and the confusingly similar marks to promote, market, offer for sale, and sell the Accused Devices.

144.    On information and belief, Defendants have had knowledge of BTL's statutory and common law rights in the BTL Trademarks since at least August 4, 2023, when attorneys for BTL sent a demand letter via email alerting Defendants to their infringing conduct and BTL's intellectual property rights.

145.    Defendants' actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill created by BTL and the BTL Trademarks.

146.    Pursuant to N.J. Stat. § 56:4-2, BTL is entitled to recover damages which may be trebled in the discretion of the court.

## COUNT V: VIOLATION OF THE NEW JERSEY TRADEMARK ACT UNDER N.J.S.A. § 56:3-13.16

147.    BTL repeats and re-alleges paragraphs 1-31 as if fully set forth herein.

148.    BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the BTL Trademarks are in full force and effect.

149.    Defendants, without BTL's permission or consent, have used and continue to use the BTL Trademarks and the confusingly similar marks identified above in connection with their advertising, promotion, sale, and offer for sale of the Accused Devices.

150.    On information and belief, Defendants' unauthorized use of the BTL Trademarks and the confusingly similar marks identified above to advertise, promote, sell, and offer for sale the Accused Devices has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of the Accused Devices, their affiliation, connection, or association with BTL, and their sponsorship or approval by BTL.

151.    On information and belief, Defendants have had knowledge of BTL's statutory and common law rights in the BTL Trademarks since at least August 4, 2023, when attorneys for BTL

sent a demand letter via email alerting Defendants to their infringing conduct and BTL's intellectual property rights.

152.    Defendants' trademark infringement has damages, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Defendants have made as a result of their infringement, plus the cost of this action. Defendants' trademark infringement is the direct and proximate cause of BTL's damages.

153.    BTL has no adequate remedy at law, and if Defendants' actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill associated with the BTL brand.

## COUNT VI: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

154.    BTL repeats and re-alleges paragraphs 1-31 as if fully set forth herein.

155.    Defendants have without authorization intentionally, willfully, and maliciously used the BTL Trademarks and/or confusingly similar variations of these trademarks to promote, market, offer for sale, and sell its products.

156.    By the acts described herein, Defendants have intentionally infringed the BTL Trademarks and engaged in unfair competition with respect to BTL in violation of the common law of the State of New Jersey.

157.    Defendants' actions are likely to cause consumer confusion for the reasons stated above.

158.    Defendants' actions have caused and will continue to cause BTL to sustain actual damages and lost profits in this District.

159.    BTL has no adequate remedy at law and will continue to suffer irreparable harm unless Defendants are enjoined.

4869-7597-4632, v. 2

160.    Because of Defendants' unlawful conduct as alleged above, BTL has been substantially injured and is entitled to damages and profits attributable to the unlawful conduct, which are presently indeterminate, and the costs of this action.

**COUNT VII: FEDERAL TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114**

161.    BTL repeats and re-alleges paragraphs 1-31 as if fully set forth herein.

162.    Defendants have used marks identical to BTL's EMSCULPT® and EMSCULPT NEO® registered trademarks.

163.    Defendants have used the identical marks in commerce in connection with the advertising and promotion of the Accused Devices.

164.    BTL has not authorized Defendants' use of the EMSCULPT® and EMSCULPT NEO® registered trademarks to advertise and promote their Accused Devices.

165.    Defendants' unauthorized use of the EMSCULPT® and EMSCULPT NEO® registered trademarks is likely to: (a) cause the public and consumers to believe that Defendants' Accused Devices are authorized by and/or affiliated with BTL; and (b) result in Defendants unfairly benefitting from the reputation of BTL and the EMSCULPT® and EMSCULPT NEO® registered trademarks to the substantial and irreparable injury of consumers, BTL, and the EMSCULPT® and EMSCULPT NEO® registered trademarks, and the substantial goodwill represented thereby.

166.    Defendants' acts as set forth herein constitute trademark counterfeiting in violation of 15 U.S.C. § 1117(b)(1) and reflect Defendants' intent to exploit the goodwill and strong brand recognition associated with BTL's EMSCULPT® and EMSCULPT NEO® registered trademarks.

**PRAYER FOR RELIEF**

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.      A judgment that Defendants have infringed one or more claims of U.S. Patent No. 10,478,634 in violation of 35 U.S.C. § 271(a)-(c);

B.      An award of damages of at least $125,000 for infringement of the '634 patent, with said damages to be trebled because of the intentional, willful, and malicious nature of Defendants' infringement, as provided by 35 U.S.C. § 284;

C.      A judgment that Defendants have willfully and maliciously infringed one or more claims of the '634 patent;

D.      A determination that this case is "exceptional" under 35 U.S.C. § 285 and an award of BTL's reasonable attorneys' fees;

E.      An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the '634 patent;

F.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.      A judgment that Defendants' use of the EMSCULPT mark, as alleged in this complaint, infringes BTL's EMSCULPT® trademark;

H.      A judgment that Defendants' use of the EMSCULPT NEO mark, as alleged in this complaint, infringes BTL's EMSCULPT NEO® trademark;

I.      A judgment that the EMS SCULPT mark is confusingly similar to BTL's EMSCULPT® trademarks and that Defendants' use of that mark, as alleged in this complaint, infringes BTL's EMSCULPT® trademarks;

J.      A judgment that the EM-SCULPT mark is confusingly similar to BTL's EMSCULPT® trademarks and that Defendants' use of that mark, as alleged in this complaint, infringes BTL's EMSCULPT® trademarks;

K.     A judgment that the EMSCULPTNEO mark is confusingly similar to BTL's EMSCULPT NEO® trademark and that Defendants' use of that mark, as alleged in this complaint, infringes BTL's EMSCULPT NEO® trademark;

L.     A judgment that the EM SCULPT mark is confusingly similar to BTL's EMSCULPT® trademark and that Defendants' use of that mark, as alleged in this complaint, infringes BTL's EMSCULPT® trademarks;

M.     A judgment that the EMSCULPT-NEO mark is confusingly similar to BTL's EMSCULPT NEO® trademark and that Defendants' use of that mark, as alleged in this complaint, infringes BTL's EMSCULPT NEO® trademark;

N.     A judgment that the EMS-SCULPT mark is confusingly similar to BTL's EMSCULPT® trademarks and that Defendants' use of that mark, as alleged in this complaint, infringes BTL's EMSCULPT® trademark;

O.     A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false advertising;

P.     An award of damages for Defendants' infringement of the BTL Trademarks, including Defendants' profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional, willful, and malicious nature of Defendants' infringement, as provided by 15 U.S.C. § 1117(b);

Q.     Alternatively, an award of statutory damages for Defendants' infringement of BTL's EMSCULPT® and EMSCULPT NEO® trademarks in an amount of $200,000 each, to be heightened to $2,000,000 each for Defendants' willful use of a counterfeit mark in accordance with 15 U.S.C. § 1117(c)(2);

R.      A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees;

S.      An award of damages against Defendants as a result of their wrongful acts against BTL in an amount to be proved at trial;

T.      An award of pre- and post-judgment interest of any monetary damages at the highest rate allowed by law;

U.      Permanent injunctive relief enjoining Defendants from:

   a.      Using the BTL Trademarks and/or any confusingly similar marks, in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good that is not a genuine good offered by BTL, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

   b.      passing off, inducing, or enabling others to sell or pass of any good as a genuine BTL product, or any other good offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale under the BTL Trademarks;

   c.      committing any acts calculated to cause consumers to believe that Defendants' goods are those sold under the authorization, control, or supervision of BTL, or are sponsored by, approved by, or otherwise connected with BTL; and

   d.      further infringing the BTL Trademarks and damaging BTL's goodwill.

V.      An award of BTL's costs and expenses in this action;

W.      Shut down Defendants' website located at https://www.exquisitedepot.com/;

X.    Freeze Defendants' bank account(s); and

Y.    For such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable to a jury.

Dated: September 24, 2024                         By: *William Murtha*

                                                  Eric Abraham, Esq.
                                                  William P. Murtha, Esq
                                                  **HILL WALLACK LLP**

                                                  *Attorneys for Plaintiff*
                                                  *BTL Industries, Inc.*

33